## THE NURTURETON.

### (District Court, D. Maryland. May 22, 1922.)

### No. 982.

Salvage ☞21—Denied for services of doubtful value, where salvor was guilty of misconduct.

 Salvage denied to a tug, which came alongside a loading steamship, in one hold of which a fire had started, and commenced pumping water on the deck, and which refused to move out of the way for a fire boat; it further being doubtful whether its services were of any value.

In Admiralty. Suit for Salvage by the Chesapeake Lighterage & Towing Company, Inc., against the steamship Nurtureton. Decree for respondent.

Harry N. Abercrombie, of Baltimore, Md., for libelant.

Janney, Stuart & Ober, of Baltimore, Md., for respondent.

ROSE, District Judge. The libelant claims salvage in aiding in the extinguishment of a fire which broke out in No. 5 hold of the steamship Nurtureton, then engaged in taking on board her cargo, which consisted of steel plates, spikes, and wire. Some of the last named was wrapped in burlap, and there was some dunnage in the hold, which was separated by steel bulwarks from the other holds.

The fire was a trifling affair. It was extinguished in half an hour or thereabouts. It did no harm to the ship, although some 40 per cent. of a couple of hundred tons of cargo in the hold in question suffered some water damage. Whether the tug was really of any use is, to say the least, very doubtful. It unquestionably got its hose on the steamer's deck, and pumped water through the hose; but whether that water ever went into the hold is by no means clear. The tug sent nobody on board to manage its hose, and according to the testimony of several of those on deck the water from it spread itself uselessly over the deck.

The tug was on the port side of the ship, and from the location of the fire in the hold it would have been exceedingly difficult, if not impossible, for the short line of hose put on board to have reached the fire at all. I find it unnecessary, however, to consider these questions of fact, for it is not disputed that the tug refused to move at the request of the commander of the city fire boat, which arrived a few minutes later. The fire boat, of course, was many times better equipped for efficient fighting of the fire than was the tug. The master of the

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tug claims there was plenty of room for the fire boat, without his moving; but there is no question that the fire boat wanted to get where the tug was. The captain of the tug told the commander of the fire boat that he had gotten there first, and was going to stay there.

It is at least doubtful whether a private salvor can ever take such a stand without forfeiting all claim to reward. If he can escape such condemnation at all, it would only be when the value of his services is less questionable than in the instant case.

The libel will be dismissed, with costs.